UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GIOVANNI DELANUEZ,

Plaintiff,

- *against* -

THE CITY OF YONKERS, YONKERS POLICE DEPARTMENT, DET. STEVEN DONOHUE badge #609, DET. DENNIS ROBERTSON badge #669 Individually and in their official capacities as YONKERS POLICE OFFICERS

Defendants.

**20 Civ. 4476 (PED)**

**DECISION AND ORDER**

**PAUL E. DAVISON, U.S.M.J.**:

On June 11, 2020, plaintiff Giovanni Delanuez commenced this action, pursuant to 42 U.S.C. §1983, alleging claims arising from his encounter with two City of Yonkers detectives, defendants Steven Donohue and Dennis Robertson. Plaintiff also asserts a *Monell* claim against the City of Yonkers. This case is before me for all purposes on the consent of the parties, pursuant to 28 U.S.C. §636 (c) (Dkt. #27). Presently before this Court is the Defendants' motion for summary judgment on Delanuez's claims (Dkt. #44). For the reasons set forth below, Defendants' motion is **GRANTED IN PART**.

## I. BACKGROUND

The following facts are gathered from the parties' statements pursuant to Local Civil Rule 56.1 of the United States District Courts for the Southern and Eastern Districts of New York, from the pleadings and from affidavits, affirmations and exhibits submitted by the parties

in support of their contentions. Any disputes of material fact are noted.[1]

On September 20, 2017, detectives Stephen Donohue and Dennis Robertson (the "Detective Defendants") were parked in an unmarked vehicle outside of 288 Riverdale Avenue in Yonkers, New York. They had been informed that an old newspaper stand was being used to secrete narcotics. They observed Delanuez leave 288 Riverdale Avenue with a box in one hand. Delanuez walked over to a white Honda Accord parked near the building. Delanuez joined the three other men already in the car and handed the box to the man in the front passenger seat. The man in the front passenger seat then placed the box into a backpack and began to move to place the backpack in the trunk of the car, but stopped when he saw a marked police car at a nearby red light. After the traffic light changed, the marked police car drove out of sight and the man who had been sitting in the front passenger seat moved the backpack to the trunk of the car. All four males then got into the car.

As the vehicle drove away from the curb and turned at the intersection, Detective Donohue testified that it failed to activate its turn signal when crossing over two lanes of traffic. The Detective Defendants then contacted the marked police car and requested that they conduct a traffic stop of the vehicle. The Detective Defendants then approached the vehicle, and Detective Robertson asked Delanuez for identification. Delanuez stated that he did not have his identification but provided a name and date of birth. Detective Robertson then informed Delanuez that a computer check of that name and date of birth did not yield any results. Delanuez then provided his real name, and all four men were asked to step out of the vehicle.

---

[1] Certain factual allegations in the parties' 56.1 statements, whether disputed or undisputed, have been omitted from the factual recitation because they are not germane to the issues presently before the Court.

Delanuez was placed under arrest for False Personation and Detective Donohue read Delanuez his *Miranda* rights at that time. Delanuez was then asked about the contents of the box and stated that the box contained an antenna. However, the driver stated that it contained money owed for a clothing business. The driver then agreed to open the trunk, backpack, and box, revealing approximately $20,000 in cash.

To establish his identity, Delanuez told the detectives that his identification was in his apartment, located in 288 Riverdale Avenue. The Detective Defendants then proceeded with another officer to Delanuez's apartment. Delanuez's girlfriend, Jeniva Perez, was in the apartment with her and Delanuez's infant child. Delanuez's mother, Dorcas Ortiz, was also present in the apartment, as well as an older male. The events which followed are in dispute.

<u>Detective Donohue</u> testified during a suppression hearing: When the detectives knocked on the door, Ms. Perez opened the door. The detectives told her why they were there and asked her to supply them with Delanuez's identification. Ms. Perez told them to "come on in" and invited the detectives into the kitchen area, right inside the door (23).[2] To the right of the door was the living room and upon entering the apartment, Detective Donohue observed a large amount of marijuana on a bed in the living room (24, 35-36). Detective Donohue stated that Ms. Perez tried to cover the marijuana with a shirt, but he stopped her because he had already seen it (24). The detectives then had Ms. Perez and Ms. Ortiz come out into the hallway (26). In the hallway, the detectives explained why they were there and provided both Ms. Perez and Ms. Ortiz with a form indicating their consent to search the apartment (26-27). Ms. Perez and Ms.

---

[2] Numbers in parentheses in this paragraph, and the next three paragraphs refer to transcript pages from the suppression hearing before the Honorable David S. Zuckerman on January 14, 2019. *See* McCormick Decl. Ex. A (hereinafter "Suppression Hr'g").

Ortiz each executed their respective forms (26-27, 39-41). After obtaining the executed forms, Detective Donohue went down and informed Delanuez that his girlfriend and his mother consented to search the apartment. Delanuez then stated that "anything you find in the apartment is mine" (41). As Detective Donohue was proceeding back upstairs to the apartment, he received a call from Officer McMenamin who had been watching Delanuez (42). Officer McMenamin informed Detective Donohue that Delanuez had told him there was a firearm in the living room area (*Id.*). The detectives then searched the apartment, and Detective Robertson found crack cocaine and a firearm (42). Detective Donohue stated that he did not recall if he discussed taking the infant child away from Ms. Perez or Ms. Ortiz if they did not sign the consent to search form (64, 65).

Detective Robertson also testified during the suppression hearing as follows: When the detectives knocked on the apartment door, it was answered by Ms. Perez (72). Detective Donohue primarily spoke with Ms. Perez and indicated that they were there to obtain Delanuez's identification (73). Ms. Perez told the detectives to come inside, which led to the detectives obtaining a consent to search from both Ms. Perez and Ms. Ortiz (*Id.*). During the search of the apartment, Detective Robertson found cocaine, a firearm, and ammunition for the firearm (74-75). Detective Robertson stated that he did not remember if Detective Donohue told Ms. Perez or Ms. Ortiz that the infant child would be taken away if they did not sign the consent to search form (74).

In contrast, Dorcas Ortiz testified at the suppression hearing as follows: She was cooking when she heard a knock at the door and Ms. Perez answered the door (91-92). Ms. Perez was talking to the police when she turned around to look for something (92-93). The police then

came in to the apartment (93). Ms. Ortiz stated that when they entered the apartment, the police started searching the apartment (94). Ms. Ortiz stated that before she signed the consent to search form, Detective Robertson showed her the gun that was found in the apartment (98). Detective Robertson also stated that if she did not sign the consent to search form, her granddaughter would be taken away and that she would be arrested (98-99). She said that she signed the paper because she did not want her granddaughter to be taken away (99).

Jeniva Perez also testified during the suppression hearing as follows: She was watching television, when she heard knocking at the door (121). She asked who it was and they said it was the police (122). She then opened the door to see what they wanted, and they said they wanted Delanuez's identification and asked her to retrieve it for them (*Id.*). She told them to give her one second, and went to close the door but one of the police officers had his foot in the door (*Id.*). Ms. Perez then went into the apartment to find Delanuez's identification, and the police followed her in (*Id.*). Ms. Perez stated that she did not invite them into the apartment (123). Ms. Perez stated that when the officers came in, they began looking around and searching through drawers in the apartment (124, 140). She also stated that she tried to cover the marijuana on the bed (124). Ms. Perez testified that the police had searched the apartment before she signed the consent to search form (136). She further stated that before she signed the consent to search form, one of the detectives had showed her the cocaine that they had found in a drawer (126). She read the paper and asked him if she had to sign it (*Id.*). The detective said that if she did not sign it, they would take her child away (*Id.*). Ms. Perez stated that she signed the form because she did not want to lose her child (*Id.*).

Upon completion of the search, the detectives recovered a handgun, rounds of

ammunition, forty-two bags of cocaine, and thirteen bags of marijuana. *See* McCormick Decl. Ex. B, at 3. After the search, Delanuez was taken to Police Headquarters where Detective Donohue read him his *Miranda* rights again. Delanuez then provided a written statement to the police. In Delanuez's written statement, he takes full responsibility for the firearm, the marijuana, and the cocaine. *See* McCormick Decl. Ex. E, at 1.

On September 21, 2017, Delanuez was charged by a felony complaint. *See* McCormick Decl. Ex. K, *located at* Dkt. 45-9. On July 18, 2017, a grand jury returned a true bill of indictment against Delanuez for one count of criminal possession of a controlled substance in the third degree (a violation of Penal Law § 220.16), one count of criminal possession of a weapon in the second degree (a violation of Penal Law § 265.03), one count of criminal possession of a controlled substance in the fourth degree (a violation of Penal Law § 220.09), one count of criminal possession of a weapon in the third degree (a violation of Penal Law § 265.02), and one count of criminal possession of a marihuana (a violation of Penal Law § 221.05). *See* McCormick Decl. Ex. L, *located at* Dkt. 45-10. On January 14, 2018, Westchester Supreme Court Judge David S. Zuckerman conducted a *Mapp*/*Huntley* hearing to determine the admissibility of the evidence obtained by the detectives. *See* McCormick Decl. Ex. A. On January 31, 2018, Judge Zuckerman issued a Decision & Order that suppressed the evidence obtained by the detectives. *See* McCormick Decl. Ex. F. Judge Zuckerman stated that the search of the apartment was conducted before Ms. Ortiz or Ms. Perez granted written consent and that the written consents were not voluntary because they were obtained as a result of threats issued by the law enforcement officers. *Id.* at 6, 8. On February 6, 2019, Judge Zuckerman dismissed the indictment against Delanuez. *See* McCormick Decl. Ex. M, *located at* Dkt. 45-11.

Throughout the course of these proceedings, Delanuez was incarcerated for approximately 90 days.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether the moving party has met its burden of proving that no factual issues exist, the court must resolve all ambiguities and draw all factual inferences in favor of the party opposing the motion. *See Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010). However, "only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment, and a district court deciding a summary judgment motion has broad discretion in choosing whether to admit evidence." *Porter v. Quarantillo*, 722 F.3d 94, 97 (2d Cir. 2013). Further, "assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005).

"When the opposing party bears the burden of proof at trial, summary judgment should be granted if the moving party 'can point to an absence of evidence to support an essential element of the nonmoving party's claim.'" *Michael Bandler, MB & Co. v. BPCM NYC, Ltd.*, 631 F. App'x 71, 71 (2d Cir. 2016) (summary order) (quoting *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir.1995)). Thus, "[a] defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." *Allen v.*

*Cuomo*, 100 F.3d 253, 258 (2d Cir. 1996). However, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). The question is whether, in light of the evidence, a rational jury could find in favor of the nonmoving party. *See Beyer v. County of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008). Therefore, summary judgment must be denied if the court finds "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *See Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986).

B. Unreasonable Search and Seizure

*1. Plaintiff's Claim*

Defendants first argue that they are entitled to summary judgment on Delanuez's claim that he was subject to an unreasonable search and seizure. To state a claim under Section 1983, a plaintiff must plead facts demonstrating that the defendant (1) deprived plaintiff of rights secured by the Constitution and laws of the United States, (2) while acting under color of state law. *See* 42 U.S.C. § 1983. The Fourth Amendment prohibits the government from conducting unreasonable searches and seizures of an individual or their homes. U.S. Const. amend. IV. A search without prior judicial approval in the form of a warrant is "per se unreasonable under the Fourth Amendment." *Katz v. United States*, 389 U.S. 347, 357 (1967). "Although warrantless searches of private property are generally presumed to be unreasonable, the law recognizes certain exceptions, for example, when the search is conducted pursuant to the consent of an authorized person." *United States v. Snype*, 441 F.3d 119, 130 (2d Cir. 2006). "The Fourth and Fourteenth Amendments require that a consent not be coerced, by explicit or implicit means, by

implied threat or covert force." *Id.* at 130-31.

Defendants do not argue that there are no material facts in dispute with respect to whether Delanuez has made a showing that his Fourth Amendment right was violated. Instead, Defendants argue that Delanuez cannot recover damages sustained as a result of his incarceration through his unreasonable search claim. Indeed, Defendants are correct. In *Townes v. City of New York*, the Second Circuit held that in a Section 1983 action alleging a Fourth Amendment search and seizure violation, a plaintiff cannot collect damages for a subsequent incarceration. 176 F.3d 138, 148 (2d Cir. 1999). The Second Circuit reasoned that because the causal relationship between the unreasonable search and seizure and a plaintiff's subsequent incarceration is broken by the intervening exercise of independent judgment, a plaintiff cannot receive damages for that subsequent incarceration. *Id.* at 147. In *Townes*, the intervening exercise of independent judgment was that of the trial court failing to suppress the evidence found as a result of the unreasonable search. *Id.* Although the trial court here found that the evidence from the search should be suppressed, the prosecutor's decision to nonetheless proceed with indicting Delanuez based on the evidence recovered serves as an intervening cause to Delanuez's incarceration. *See Wray v. City of New York*, 490 F.3d 189, 193-94 (2d Cir. 2007). Therefore, the causal link is broken between the unreasonable search and the harm that Delanuez ultimately sustained as a result of his incarceration. Accordingly, Defendants' motion for summary judgment is granted to the extent that Delanuez claims that Defendants' violation of his Fourth Amendment rights resulted in his conviction and imprisonment.

*2. Qualified Immunity*

The Detective Defendants further argue that they are entitled to qualified immunity on

Delanuez's unreasonable search and seizure claim because reasonable officers could have reasonably believed that there was probable cause to search Delanuez's apartment. "As a general rule, police officers are entitled to qualified immunity if (1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to believe their acts did not violate those rights." *Kerman v. City of New York*, 374 F.3d 93, 108 (2d Cir. 2004). As noted above, the Fourth Amendment protects individuals "against unreasonable searches and seizures." U.S. Const. amend. IV. "A police officer's physical intrusion into an individual's home constitutes a Fourth Amendment 'search.'" *Batt v. Buccilli*, 725 F. App'x 23, 25 (2d Cir. 2018). "An officer conducting a search is entitled to qualified immunity where clearly established law does not show that the search violated the Fourth Amendment." *Id.* As discussed *supra*, a search without a warrant is "per se unreasonable under the Fourth Amendment", but there are exceptions to this rule. *Katz*, 389 U.S. at 357. The exception noted above was consent. *See Snype*, 441 F.3d at 130. Another such exception is an exigent circumstance, or a situation that is "'so compelling' that a warrantless search of home is 'objectively reasonable.'" *Batt*, 724 F. App'x at 25.

Here, the Detective Defendants argue that their search of the apartment was objectively reasonable because "[o]nce the apartment door was opened, [they] observed a large amount of marijuana in a common area of the apartment" and Delanuez admitted that anything found within the apartment belonged to him. Defs.' Mem. Supp. Summ. J. 10. The Detective Defendants' first factual contention is belied by the record. Indeed, Detective Donohue testified at the suppression hearing that he observed the marijuana after he entered into the apartment, not when Ms. Perez opened the door. Suppression Hr'g 24. Similarly, in his investigative report,

Detective Donohue reported that he observed the marijuana when he entered into the kitchen area of the apartment because it allowed him to fully view the living room area where the marijuana was located. McCormick Decl. Ex. B. Detective Robertson did not provide testimony regarding when he viewed the marijuana. *See* Suppression Hr'g 73. Therefore, the evidence does not indicate that the Detective Defendants saw the marijuana prior to entering the apartment. Further, whether they were lawfully in the apartment in the first place is a material fact that is in dispute, as Ms. Perez testified that the detectives prevented her from closing the door while both detectives testified that she invited them in. *Compare* Suppression Hr'g 23 *and id.* at 73, *with id.* at 122-23. This Court cannot find qualified immunity where the material historical facts are in dispute. *See Kerman*, 374 F.3d at 109. Accordingly, the Detective Defendants' first argument is unsupported by the record and otherwise based on a material fact in dispute. Thus, this rationale cannot not support a finding of summary judgement on qualified immunity.

The Detective Defendants also argue that Delanuez's statement that anything found within the apartment belonged to him provided them with a reason to enter into his apartment. However, this statement does not justify a warrantless search. The Detective Defendants argue that this statement gave them arguable probable cause. However, to execute a warrantless search, law enforcement officers need "probable cause plus exigent circumstances in order to make a lawful entry into a home." *Harris v. O'Hare*, 770 F.3d 224, 239 (2d Cir. 2014). The Detective Defendants do not argue that Delanuez's statement presented the exigent circumstances to justify their warrantless search. Indeed, Delanuez's statement is a far cry from the typical exigent circumstances, which include "law enforcement's need to provide emergency

assistance to an occupant of a home, engage in 'hot pursuit' of a fleeing suspect, or enter a burning building to put out a fire and investigate its cause." *Missouri v. McNeely*, 569 U.S. 141, 149 (2013) (internal citations omitted). Accordingly, the Detective Defendants are not entitled to summary judgment on the basis of qualified immunity for Delanuez's unreasonable search and seizure claim.

C. Malicious Prosecution

In his opposition to the Defendants' motion for summary judgment, Delanuez argues, for the first time, that although his complaint did not use the words "malicious prosecution", he in fact alleged all the elements to assert a malicious prosecution claim. Pl's Mem. Opp'n Summ. J. 6. Delanuez contends that this argument is encompassed within his third claim for relief. *Id.* This is consequential because a malicious prosecution claim—unlike a search and seizure claim—would allow Delanuez to recover damages arising from his incarceration. *See Townes*, 176 F.3d at 149. Defendants argue that Delanuez's third claim for relief fails to sufficiently plead a malicious prosecution claim. Defs.' Reply Supp. Summ. J. 2.

*1. Delanuez's "New" Theory*

"A party generally may not assert a cause of action for the first time in response to a summary judgment motion." *Simpson v. Town of Warwick Police Dep't*, 159 F. Supp. 3d 419, 440 (S.D.N.Y. Feb. 4, 2016). Nonetheless, under Federal Rule of Civil Procedure 15(b), "a district court may consider claims outside those raised in the pleadings so long as doing so does not cause prejudice." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 569 (2d Cir.2000), *superseded on other grounds by* N.Y.C. Local L. No. 85. "Claims that are entirely new—that is, claims based on new facts and new legal theories with no relation to the previously pled claims—are

commonly rejected at the summary judgment stage due to the prejudice to the defendant, who may not have had fair notice of the claim and consequently may not have had an adequate opportunity for discovery." *Henry v. Metropolitan Transp. Authority*, No. 07 Civ. 3561(DAB), 2014 WL 4783014, at *10 (S.D.N.Y. Sept. 25, 2014) (alteration omitted). "In contrast, claims that are related to or are mere variations of previously pleaded claims—that is, claims based on the same nucleus of operative facts and similar legal theories as the original claims—may be raised on a motion for summary judgment where the defendant was clearly on notice from the complaint and was not unfairly prejudiced." *Id.* (internal quotation marks omitted).

Although Delanuez's complaint could have been clearer in articulating a malicious prosecution claim, it was nonetheless sufficient to put Defendants on notice that he intended to pursue such an argument. *See Ragusa v. Malverne Union Free Sch. Dist.*, 381 F. App'x 85, 89-90 (2d Cir. 2010). Indeed, Delanuez's complaint specifically alleges that "[i]n commencing and continuing the said tainted prosecution, defendants caused Giovanni Delanuez to be charged and prosecuted and during the prosecution of Giovanni Delanuez committed perjury in order to circumvent the [F]ourth [A]mendment's proscription against unlawful search and seizure." Compl. ¶ 60. Delanuez further alleged that the "defendants knew or should have known through the exercise of reasonable care and proper police procedure that said investigation and further prosecution into this matter was based on police lies in order to circumvent the Fourth Amendment by tailoring testimony to advance an exception to the Fourth Amendment." *Id.* ¶ 61.[3] These allegations provide sufficient notice to Defendants that Delanuez intended to pursue

[3] The Court will observe that in his opposition, Delanuez argues that his third claim states a malicious prosecution claim. Delanuez's third claim neither alleges a malicious prosecution claim, nor puts Defendants on notice that he is asserting a malicious prosecution claim. *See*

an argument that the detectives engaged in malicious prosecution.

Further, the Defendants would not be prejudiced by the inclusion of Delanuez's malicious prosecution claim. This claim arises from a similar nucleus of operative facts and asserts similar legal theories as the claims alleged. *See Henry*, 2014 WL 4783014, at *10. In fact, this claim arises from the same exact facts that support Delanuez's Fourth Amendment violation and although the legal theories are similar as opposed to identical, that is insufficient to establish prejudice. *See Cruz*, 202 F.3d at 569 ("In opposing a Rule 15(b) amendment, a party cannot normally show that it suffered prejudice simply because of a change in its opponent's legal theory. Instead, a party's failure to plead an issue it later presented must have disadvantaged its opponent in presenting its case." (internal quotation marks omitted)). Accordingly, I will consider the merits of Delanuez's malicious prosecution claim.

*2. Viability of Delanuez's Malicious Prosecution Claim*

"To succeed on a malicious prosecution claim under § 1983, a plaintiff must establish the elements of a malicious prosecution claim under New York state law, as well as a violation of his rights under the Fourth Amendment." *Simpson*, 159 F. Supp. 3d at 441 (citing *Manganiello v. City of New York*, 612 F.3d 149, 160-61 (2d Cir. 2010)). In order to assert a claim for malicious prosecution, a plaintiff must show: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Manganiello*, 612 F.3d at 161. Plaintiff must also show "a sufficient

---

Compl. ¶¶ 64-67. Nonetheless, Delanuez's second claim does in fact assert allegations relevant to a malicious prosecution claim.

post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *Rohman v. New York City Transit Auth.*, 215 F.3d 208, 215 (2d Cir.2000). Delanuez satisfies this final requirement as it is not in dispute that he was incarcerated for a period of approximately 90 days during the course of this proceeding.

The first element is the initiation or continuation of a criminal proceeding. Under the first element, a plaintiff must show that the defendant "play[ed] an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." *Manganiello*, 612 F.3d at 163. This element is met where a plaintiff can show that a law enforcement officer "failed to make a complete and full statement of facts to the District Attorney, misrepresented or falsified evidence, withheld evidence or otherwise acted in bad faith[.]" *Id.* at 160. Plaintiffs may also satisfy this first element "by showing that officers brought formal charges and had the person arraigned, or filled out complaining and corroborating affidavits, or swore to and signed a felony complaint." *Llerando-Phipps v. City of New York*, 390 F. Supp. 2d 372, 382-83 (S.D.N.Y. 2005) (citations omitted). Here, Delanuez alleges that the officers commenced and continued the prosecution against him and there is evidence to support that assertion. Indeed, Detective Donohue swore to and signed the felony complaint. McCormick Decl. Ex. K, *located at* Dkt. 45-9. Accordingly, Detective Donohue was clearly involved in the initiation of Delanuez's prosecution. *See Llerando-Phipps*, 390 F. Supp. 2d at 382-83. Although Detective Robertson was not involved in the initiation of Delanuez's prosecution, he was involved with the continuation of Delanuez's prosecution. Delanuez alleges that Detective Robertson testified falsely at the suppression hearing, and based upon the conflicting testimony at the suppression hearing, Delanuez's allegation is not without merit. This allegation is sufficient to meet the first

element of a malicious prosecution claim. *See Birch v. Danzi*, 18-CV-839 (PKC)(LB), 2018 WL 3613016, at *6 (E.D.N.Y. July 26, 2018). Therefore, Delanuez has met the first element of a malicious prosecution claim with respect to the Detective Defendants.

The second element is that the proceeding terminated in plaintiff's favor. Recently, the Supreme Court held in *Thompson v. Clark* that a plaintiff need not show that the proceedings ended with an affirmative indication of innocence, but rather it is sufficient for plaintiff to show that the proceedings ended without conviction. 142 S.Ct. 1332, 1341 (2022). Here, the proceedings against Delanuez ended in dismissal of the indictment. McCormick Decl. Ex. M, *located at* Dkt. 45-11. Based on the Supreme Court's recent holding in *Thompson*, this is sufficient to establish that the proceedings ended in Delanuez's favor.

Under the third element, Delanuez must show that there was a lack of probable cause for commencing the proceeding. The Second Circuit has clarified that "probable cause" for a malicious prosecution claim means "probable cause to believe that [the prosecution] could succeed[.]" *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003). The Second Circuit has also cautioned courts not to "conflate probable cause to arrest with probable cause to believe that [a plaintiff] could be successfully prosecuted" as in a malicious prosecution action, "[o]nly the latter kind of probable cause is at issue[.]" *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 417 (2d Cir. 1999). Therefore, in instances where evidence "would clearly not be admissible", "there would be no probable cause to believe that the prosecution could succeed." *Boyd*, 336 F.3d at 77. "Courts applying this standard have largely held that, accordingly, evidence obtained in violation of a plaintiff's Fourth Amendment rights cannot be relied on in arguing that there was probable cause to believe the plaintiff could be successfully prosecuted." *Vasquez v. Reilly*,

No. 15-CV-9528 (KMK), 2017 WL 946306, at *6 (S.D.N.Y. Mar. 9, 2017) (collecting cases). Here, whether the evidence was obtained in violation of Delanuez's Fourth Amendment right "is a genuine issue of material fact that would have to be resolved before the element of probable cause could be established." *Boyd*, 336 F.3d at 77.

Notably, "a grand jury indictment gives rise to a presumption that probable cause exists and a claim for malicious prosecution in relation to the crimes described in the indictment thereby is defeated." *McClellan v. Smith*, 439 F.3d 137, 145 (2d Cir. 2006). However, "[t]he presumption is rebuttable, and may be overcome by evidence establishing that the police witnesses 'have not made a complete and full statement of facts . . . that they have misrepresented or falsified evidence . . . or otherwise acted in bad faith.'" *Boyd*, 336 F.3d at 76 (quoting *Colon v. City of New York*, 455 N.E.2d 1248 (N.Y. 1983)). Here, Delanuez has alleged that the prosecution was based on lies by the detectives. Compl. ¶ 60. Given the conflicting testimony at the suppression hearing, with Detective Donohue and Detective Robertson presenting one narrative, and Ms. Ortiz and Ms. Perez presenting another narrative, there is evidence that suggests that Detective Donohue and Detective Robertson did not make a complete and full statement of the facts. Nonetheless, it is not for the Court to decide this issue on summary judgement, as this is a fact that is in dispute between the parties. Although this Court cannot decide this issue on summary judgment, the Court nonetheless finds that there is sufficient evidence to support this element of Delanuez's malicious prosecution claim.

The final element to a malicious prosecution claim is actual malice. "Under New York law, malice does not have to be actual spite or hatred, but means only that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other

than a desire to see the ends of justice served." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir.1996) (internal quotation marks omitted). Further, "a lack of probable cause generally creates an inference of malice." *Manganiello*, 612 F.3d at 163. Because it is disputed whether there was probable cause to initiate the prosecution, it would be improper for this Court to determine whether actual malice was present. Nonetheless, there is merit to Delanuez's claim provided he can show that Detective Donohue and Detective Robertson commenced and continued the proceeding against him for some improper motive. Accordingly, the Court allows Delanuez to proceed on a malicious prosecution theory.

D. *Monell* Claims

Defendants argue that summary judgment should be granted with respect to Delanuez's *Monell* claim against Defendant City of Yonkers. A municipality may not be held liable under the theory of *respondeat superior* for the unconstitutional actions of its employees. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). "Rather, in order to hold a municipality liable under § 1983 for the unconstitutional acts of its employees, the plaintiff must plead and prove that the violation of constitutional rights resulted from a municipal custom or policy." *Cucuta v. New York City*, 25 F. Supp. 3d 400, 418-19 (S.D.N.Y. 2014). A plaintiff alleging a *Monell* claim need not identify an explicit, official policy, but rather "[i]t is sufficient to show a widespread pattern of behavior that constitute a custom or usage with the force of law or the constructive acquiescence of senior policy-making officials." *Id.* (internal quotation marks omitted). Nonetheless, "'isolated acts' by non-policymaking municipal employees are 'generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify municipal liability.'" *Watts v. New York City Police Dep't*, 100 F. Supp. 3d 314, 330 (S.D.N.Y.

2015) (quoting *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012)).

Here, Defendants argue that Delanuez relies on civil actions against the City of New York or the New York Police Department in an effort to establish a *Monell* claim, but fails to refer to any record evidence that actually supports his *Monell* claim against the City of Yonkers. Defs.' Mem. Supp. Summ. J. 10-11. In opposition, Delanuez summarily asserts that the testimony from the suppression hearing "shows that the City of Yonkers had several policies, practices and/or customs[.]" Pl's Mem. Opp'n Summ. J. 8. However, Delanuez fails to even identify which part of the hearing testimony indicates that there is a policy or custom. This is insufficient to overcome Defendants' motion for summary judgment. *See Watts*, 100 F. Supp. 3d at 330 ("A plaintiff's conclusory allegations of municipal liability will not defeat a motion for summary judgment on a Monell claim." (internal quotation marks and alteration omitted)). Moreover, Delanuez's isolated interaction with the Defendants is not sufficient to establish a *Monell* claim. *See id.* Outside of his isolated incident, Delanuez refers, in passing, to a "police corruption scandal involving the 30th precient [sic] in 1994." Pl's Mem. Opp'n Summ. J. 10. As noted by Defendants, allegations against other municipalities have no bearing on Delanuez's action against the City of Yonkers. Accordingly, Defendants' motion for summary judgment is granted with respect to Delanuez's *Monell* claim.

## III. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is **GRANTED IN PART,** and Delanuez's *Monell* claim and his Fourth Amendment claim to the extent that it claims to have resulted in his incarceration are dismissed. Delanuez will be allowed to proceed with a malicious prosecution claim.

The Clerk of the Court is respectfully directed to terminate the pending motions (Dkts. #44, #50).

The Court has scheduled a Pretrial Conference on November 28, 2022 at 10:30 am in Courtroom 420.

Dated: October 28, 2022
White Plains, New York

**SO ORDERED.**

PAUL E. DAVISON, U.S.M.J.